UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

MARY PORTER,

    Plaintiff,

v.                                                  Case No. 2:09-CV-679-FtM-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

**OPINION AND ORDER**[1]

Plaintiff filed an application for a period of disability and disability insurance benefits on March 7, 2006, and a Title XVI application for supplemental security income on March 20, 2006. In both applications, Plaintiff alleged disability beginning July 1, 2003. These claims were denied initially on August 3, 2006, and upon reconsideration on April 17, 2007. On March 30, 2009, a video hearing was held before Administrative Law Judge Jennifer Millington. [Tr. 11, 523-540]. On May 6, 2009, Administrative Law Judge Millington issued her decision denying Plaintiff's application. [Tr. 11-22] The Appeals Council denied Plaintiff's Request for Review making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, the decision is **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 22, 2010 (Doc.# 26).

I.  **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On March 7, 2006, Plaintiff filed her application for Disability Insurance Benefits and supplemental security income alleging disability beginning July 1, 2003. The Decision of ALJ Millington dated May 6, 2009, denied Plaintiff's claim for benefits. (Tr. 11-22). At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2003, through her date last insured of June 30, 2008. (Tr. 13). At Step 2, the ALJ found that Plaintiff has had the following severe impairments: right leg radiculitis, right knee pain, sleep apnea, and possible reflex sympathetic dystrophy (20 C.F.R. 404.1520(c) and 1460.920(c)). The ALJ determined Plaintiff's statements concerning her inability to work not to be entirely credible. (Tr. 19). At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step 4, the ALJ determined Plaintiff was able

to perform her past relevant work as a receptionist and telephone order clerk. The ALJ found that Plaintiff residual functional capacity is consistent with a reduced range of light work. (Tr. 22). The ALJ, along with the VE testimony found the Plaintiff could perform her past relevant work as a receptionist as classified in the Dicttionary of Occupational Titles (which is described as sedentary semi-skilled) and as a telephone order clerk (described as sedentary, semi-skilled) (Tr. 22). Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§404.1520(g). (Tr. 22).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must

scrutinize the entire record to determine reasonableness of factual findings).

## II.    REVIEW OF FACTS

Plaintiff was born on March 24, 1966, and was forty-three years old at the time of the ALJ decision. Plaintiff initially stated she had an eleventh grade education, but at other times stated she had graduated from high school. Plaintiff testified she had previous work experience as a hair dresser, a retail clerk and a telephone order clerk. (Tr. 94, 536). The ALJ determined that Plaintiff met the requirements for a period of disability and disability insurance benefits as set forth in the Social Security Act through June 30, 2008 (Tr. 11).

Plaintiff alleged she became totally disabled on July 1, 2003, due to reflex sympathetic dystrophy ("RSD" in her right leg,[2] sleep apnea, and back pain (Tr. 44, 53). On October 18, 1996, Plaintiff was involved in a motor vehicle accident during which her seat belt failed, causing her right knee to hit the steering column (Tr. 144). She sustained right knee lacerations along with other injuries (Tr. 144). Plaintiff subsequently experienced multiple problems with her knee, and was ultimately diagnosed with reflex sympathetic dystrophy (Tr. 163).

In March 2004, Plaintiff went to the hospital complaining of shortness of breath and chest pain (Tr. 319). Plaintiff was alert, oriented, and her affect was appropriate. Plaintiff was discharged with a prescription for Amoxicillin, advised to continue her Percocet and follow-up with her family physician (Tr. 320).

---

[2]   Also known as complex regional pain syndrome, a chronic neuropathic pain "that follows soft-tissue or bone injury (type I) or nerve injury (type II) and lasts longer and is more severe than expected for the original tissue damage." Merck Manual.

In January 2005, she returned to the Sarasota County Health Department. Plaintiff was seen by an emergency room doctor (name illegible). Plaintiff advised she "was tired all the time". Doctor's notes show Plaintiff as "self-employed— jewelry", on Zoloft and "doing fine" (Tr. 207). The rest of the notes are not legible (Tr. 207).

In October 17, 2005, Plaintiff was seen by Robert Guirguis, D.O. Plaintiff complained of low back pain with right lower extremity radiation. Dr. Guirguis advised epidural steroidal injections under fluoroscopy to optimize pain control. "[I]f Plaintiff did not have long term relief 'will move forward with continuous epidural effusion." Benefits of Opioids for chronic pain was discussed. Plaintiff was to follow up for medication evaluation/refill. (Tr. 395)

In January 2006, she returned to the emergency room with sinus congestion (Tr. 295). She was alert and oriented, and her mood and affect were appropriate (Tr. 296). Plaintiff was diagnosed with an upper respiratory tract infection, i.e. sinusitis. Plaintiff stated she needed antibiotics, but Doctor Brian M. Garby advised that she did not need them and she was discharged to go home (Tr. 296).

In March 2006, Plaintiff complained to Sara Harden, MA (interval history) that she was having trouble sleeping and advised it started after she received the injections. (Tr. 371). Plaintiff received a lidoderm patch with two refills. Plaintiff was advised to follow-up with Dr. Guirguis (Tr. 371).

On April 18, 2006, Plaintiff informed Dr. Greg Ferreira that she "has a big urge to nap, but has not fallen asleep at appropriate times and denies difficulty while driving or falling asleep at a red light" (Tr. 408). Dr. Ferreira described her as "alert, in no obvious distress" (Tr. 409). She underwent a sleep study and was diagnosed with "mild obstructive sleep apnea" (Tr. 403, 405). She started using a CPAP machine, and Dr. Ferreira stated she was "doing quite well with her CPAP" (Tr. 403).

On June 5 2006, Plaintiff was seen at the Sarasota County Health Department (Tr. 198). Notes reveal Plaintiff reported she "sleeps well [with] CPAP, now well rested, mood great, she'll see pain MD" (Tr. 198).

On September 19, 2006, during an exam with Dr. Ferreira, Plaintiff was again found to be "alert, in no obvious distress". It was recommended "[p]atient may do better with a lower pressure and I will change her to 7 cm. of water (CPAP machine). She is already on Singulair and nasal steroid therapy, but if she has persistent difficulties, perhaps an ENT consultation may be of benefit (Tr. 401)."

Plaintiff underwent a consultative psychological exam with Dr. Lynn Bernstein (Tr. 411). During the exam, Plaintiff was cooperative, relevant, and oriented; her attention and variable concentration were intact (Tr. 412). Dr. Bernstein stated Plaintiff's thought processes "indicated intact reality orientation" (Tr. 412). Plaintiff "described adequate sleep with her sleep apnea machine, gets up around 7:30 AM, and spends her days doing paperwork for her SO ("significant other") TV business, runs errands, goes to the Post Office, answers phones, her SO and children help with heavy chores" (Tr. 412). Dr. Bernstein found Plaintiff able to manage her finances independently. "[I]MPRESSIONS: Pain D/O

Associated with Both Psychological Factors and a General Medical Condition; Adjustment D/O with Mixed Anxiety and Depressed Mood, PTSD, hx. Abuse per client (Tr. 412)."

Plaintiff also underwent a physical consultative exam with Dr. Phillip Spiegel (Tr. 413). During the exam, Plaintiff's "sustained concentration/persistence" was "ok, her gait was normal, and she could tandem walk (Tr. 416-17)".

A state agency medical consultant, Dr. Efren Baltazar, reviewed the file and opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and walk for six hours in an eight hour day, and sit for six hours (Tr. 425). Dr. Baltazar also opined that because of her sleep apnea, Plaintiff should never climb ladders, ropes, or scaffolds, and she should avoid all exposure to hazards (Tr. 426, 428).

## III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

### A. THE ALJ ERRED BY FAILING TO PROPERLY EVALUATE PLAINTIFF'S COMPLAINTS OF FATIGUE AND DROWSINESS

Plaintiff argues that although the ALJ acknowledged that the Plaintiff complained of fatigue and drowsiness he discredited the Plaintiff's complaints.

The relevant medical evidence did not indicate Plaintiff was significantly limited by her symptoms of drowsiness and fatigue and instead provided substantial evidence to support the ALJ's "RFC" finding. Plaintiff claimed that due to sleep apnea, she had a hard time focusing and staying awake (Tr. 53, 529). However, the medical evidence did not support the severity of Plaintiff's allegations (Tr. 19). For example, in March 2004, she was alert, and oriented, with appropriate affect (Tr. 320). In January 2005, she returned to the doctor stating she was "self-employed—jewelry" and she was "doing fine" (Tr. 207). In November 2005,

Plaintiff was alert and oriented (Tr. 394).

Further, despite reporting she had "a big urge to nap," Dr. Ferreira noted she "has not fallen asleep at inappropriate times and denies difficulty while driving or falling asleep at a red light" (Tr. 408). Emergency room doctors noted she was "very intense and persistent" (Tr. 316). In January 2006, she was alert and oriented, and her mood and affect were appropriate (Tr. 296). Dr. Ferreira described her as "alert, in no obvious distress" (Tr. 409). She underwent a sleep study and Dr. Ferreira diagnosed her with "mild obstructive sleep apnea" (Tr. 403, 405). She started using a CPAP machine, and Dr. Ferreira stated she was "doing quite well with her CPAP" (Tr. 403). She had no breakthrough snoring, and her nasal congestion improved (Tr. 403). Plaintiff felt less somnolent and denied significant residual dyspnea (Tr. 403). Dr. Ferreira described her as "alert, in no obvious distress" (Tr. 403). The ALJ noted that in April 2006, Plaintiff denied sleep disturbances (Tr. Tr. 20 370). In June 2006, her doctor noted she "sleeps well [with] CPAP, now well rested, mood great" (Tr. 198). Later that month Plaintiff was "able to function" (Tr. 368). In September 2006, during an exam with Dr. Ferreira, Plaintiff was "alert, in no obvious distress" (Tr. 401).

The ALJ further noted that Dr. Bernstein found Plaintiff was cooperative, relevant, and oriented (Tr. 412). Her attention and variable concentration were intact (Tr. 412). Dr. Bernstein stated Plaintiff's thought processes "indicated intact reality orientation" (Tr. 412). Plaintiff "described adequate sleep with her sleep apnea machine, gets up around 7:30 AM, and spends her days doing paperwork for her SO's TV business, runs errands, goes to the Post Office, answers phones, her SO and children help with heavy chores" (Tr. 412). Additionally, during Dr. Spiegel's exam, Plaintiff's "sustained concentration/persistence"

was "ok" (Tr. 416). Furthermore, the ALJ adopted the opinion of Dr. Baltazar, which was the only opinion in the record that offered any limitations based on Plaintiff's sleep apnea (Tr. 21-11, 426, 428). Dr. Baltazar opined that Plaintiff's sleep apnea prohibited her from climbing ladders, ropes, or scaffolds, and all exposure to hazards such as machinery and heights (Tr. 426, 428). The ALJ adopted Dr. Baltazar's proposed limitations for sleep apnea in his RFC finding (Tr. 21). Therefore, the ALJ's evaluation of Plaintiff's credibility with respect to the limitations associated with sleep apnea is supported by substantial evidence.

Plaintiff's daily activities were also inconsistent with her subjective complaints of drowsiness and supported the ALJ's RFC finding. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also *Macia*, 829 F.2d at 1012. Although Plaintiff claimed that she stayed in bed all day (Tr. 534-35), the ALJ noted that she "described adequate sleep with her sleep apnea machine, gets up around 7:30 AM, and spends her days doing paperwork for her SO (significant other) etc. (Tr. 20, 412). Her sister also reported that Plaintiff would work occasionally with her boyfriend, and that he gave her paperwork to keep her busy (Tr. 75). Further, despite the fact she claimed she only cooked simple meals, Plaintiff's sister stated she "not only makes sandwiches and uses the microwave, but she cooks full, complete meal [sic] if/when she is not in too much pain" (Tr. 75, 80). Plaintiff was able to take care of her fourteen-year-old child, which she described as "quite a lot" (Tr. 79). She was able to drive and shop for clothes and groceries (Tr. 81). Plaintiff stated she spent two to three hours shopping for groceries (Tr. 94). She also stated she had no problems with her personal care, and she tried to stay social (Tr. 82, 92). These activities supported the ALJ's findings because they were inconsistent with the drowsiness and fatigue Plaintiff described.

Further, Plaintiff's inconsistent representations indicated she was not credible. 20 C.F.R. § 416.929(c)(4); *McCray v. Massanari*, 175 F. Supp. 2d. 1329, 1338 (N.D. Ala. 2001) ("the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence in the record"). For example, despite the fact that Plaintiff told the ALJ she did not work after 2003, her sister and the consultative examiner reported that she was working at least part time and Plaintiff told her doctor she was "self-employed—jewelry" (Tr. 75, 207, 412, 527). Plaintiff told the ALJ she did not cook, but her sister reported she "cook[ed] full, complete meal [sic]" (Tr. 75, 530). This evidence supported the ALJ's decision that Plaintiff's testimony was not entirely credible. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ specifically considered Plaintiff's claims and dismissed them as not credible (Tr. 18). Although Plaintiff points to evidence that could support her allegation, (Pl.'s Br. at 7-8) the ALJ considered this evidence, and found it inconsistent with the medical evidence discussed above (Tr. 18, 19). Specifically, Plaintiff was only diagnosed with "mild obstructive sleep apnea" (Tr. 403, 405). She was put on a "CPAP" machine and was "doing quite well with her "CPAP" (Tr. 403). She was "alert, in no obvious distress," "able to function" and "was alert, oriented, ambulating well" (Tr. 368, 401, 448-49, 451-52, 501). She slept "well [with] CPAP, now well rested, mood great" (Tr. 198). Further, the ALJ adopted the only medical opinion that included limitations stemming from her sleep apnea (Tr. 21-22, 426, 428). The ALJ, as fact finder, properly weighed the evidence and determined that Plaintiff's complaints were not credible. *Dyer*, 395 F.3d at 1210.

Although Plaintiff may think it was "illogical" for the ALJ to reject Plaintiff's subjective complaints based on prior medical evidence, her subjective complaints alone,

cannot establish disability. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). The ALJ properly examined the objective evidence and determined that it did not support Plaintiff's complaints. Consequently, substantial evidence supported the ALJ's credibility assessment.

>  **B.   THE ALJ ERRED BY FAILING TO ASK THE VOCATIONAL EXPERT A HYPOTHETICAL QUESTION THAT INCLUDED ALL OF PLAINTIFF'S IMPAIRMENTS**

Plaintiff argues that the ALJ erred because he did not ask the vocational expert ("VE") a hypothetical question that included all of Plaintiff's impairments (Pl.'s Br. at 15, 17). Specifically Plaintiff argues that her subjective complaints of drowsiness and fatigue would have resulted in additional limitations. However, a hypothetical question only needs to include the claimant's functional limitations that are supported by the record. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986). The hypothetical does not need to include alleged limitations that are not credible. *Wilson*, 284 F.3d at 1227-28. The ALJ's hypothetical question included all of Plaintiff's credible limitations. The hypothetical the ALJ posed to the vocational expert fully incorporated the RFC finding (Tr. 16, 537). As discussed in the previous argument, the ALJ found that Plaintiff's complaints of drowsiness and fatigue were not entirely credible. However, the ALJ did consider those symptoms and adopted Dr. Baltazar's opinion, the only limitations for sleep apnea supported by the record (Tr. 21-22, 426, 428). Thus, the hypothetical the ALJ posed to the vocational expert fully incorporated all of Plaintiff's credible limitations. *Wilson*, 284 F.3d at 1227-28.

### IV. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence and decided by the proper legal standards.

1. Judgment shall be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

2. The Office of The Clerk is directed to enter judgment and close this case.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 31st day of March, 2011.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Parties and Counsel of Record